JOURNAL ENTRY AND OPINION
Appellant, Leonard Allmon, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, which granted permanent custody of his children to appellee, the Cuyahoga County Department of Children and Family Services ("CCDCFS").
Appellant and Sandra Harris are the parents of Michelle and Michael Harris. Michelle was born on January 1, 1987, and Michael was born on August 13, 1988. Appellant owns a house located at 11425 Tuscora, Cleveland, Ohio. He lives on the third floor of the house and rents the first floor to Ms. Harris. Appellant and Ms. Harris denied that appellant was the father of the children until court-ordered genetic testing conducted in June of 1999 established paternity in favor of appellant.
In 1997, the children were removed from the care of Ms. Harris due to physical abuse. The juvenile court granted legal custody to Lillie Johnson, the children's godmother. On October 8, 1998, CCDCFS moved for an order of temporary custody because Ms. Johnson was unable to continue caring for the children. The motion was granted, and the children were placed in foster care. On November 2, 1998, CCDCFS filed a complaint for neglect and permanent custody of the children. The complaint alleged that Ms. Harris had failed to comply with the components of her case plan and had failed continuously and repeatedly to remedy the conditions which led to the removal of the children. The complaint further stated that appellant was the alleged father and did not provide any care or support for the children.
The juvenile court held an adjudicatory hearing in the instant matter on February 15, 2000, at which the court determined that the children were neglected. The adjudicatory hearing was immediately followed by a dispositional hearing. The juvenile court granted CCDCFS's motion for permanent custody on April 17, 2000. From that judgment, appellant assigns the following errors:
 I. FATHER, LEONARD ALLMON, WAS DENIED HIS RIGHT TO BE CONSIDERED AS A POSSIBLE RELATIVE PLACEMENT FOR THE TWO CHILDREN, PURSUANT TO OHIO REVISED CODE STATUTE S2151.353(A)(4);(B); 2151.419, 3111.13(C); 3107.06.
 II. FATHER WAS NOT NAMED IN THE FINAL JUDGMENT ENTRY GRANTING THE COUNTY PERMANENT CUSTODY NOR WAS HE EXPLICITLY DETERMINED NOT TO BE A SUITABLE PLACEMENT — FATHER IS SIMPLY IGNORED.
 III. DUE TO NOS. 1 AND 2, FATHER HAS BEEN DENIED HIS CONSTITUTIONAL RIGHTS UNDER BOTH THE OHIO 
UNITED STATES CONSTITUTIONS.
 IV. DUE TO NOS. 1, 2, AND 3, FATHER'S CONSTITUTIONALLY PROTECTED LIBERTY INTERESTS ARE AT STAKE IN A PERMANENT CUSTODY CASE, AND IN SUCH A SITUATION, DUE PROCESS REQUIRES THAT THE STATE PROVE BY CLEAR AND CONVINCING EVIDENCE THAT APPLICABLE STATUTORY STANDARDS HAVE BEEN MET, USCA CONSTITUTION AMENDMENT 14 AND ORC 2151.44 [sic] (1998).
In his first assignment of error, appellant alleges that he was denied his right to be considered as a possible relative placement for the children. Appellant contends that his legal rights as a parent were violated because the juvenile court did not consider placing the children with him before granting permanent custody to CCDCFS. Appellant asserts that he is entitled by statutory provisions of the Ohio Revised Code and the United States Constitution to be considered as a possible placement for his children in the event the mother is determined to be an unfit parent.
Appellant relies on R.C. 2151.353(B) to support his contention that the non-residential parent must be considered for possible placement prior to granting permanent custody to a children services agency. R.C.2151.353(B) does not include such a requirement; it provides as follows:
 No order for permanent custody or temporary custody of a child or the placement of a child in long-term foster care shall be made pursuant to this section unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting permanent custody, temporary custody, or the placement of the child in long-term foster care as desired, the summons served on the parents of the child contains as is appropriate a full explanation that the granting of an order for permanent custody permanently divests them of their parental rights, a full explanation that an adjudication that the child is an abused, neglected, or dependent child may result in an order of temporary custody that will cause the removal of the child from their legal custody until the court terminates the order of temporary custody or permanently divests the parents of their parental rights, or a full explanation that the granting of an order for long-term foster care will result in the removal of the child from their legal custody if any of the conditions listed in divisions (A)(5)(a) to (c) of this section are found to exist, and the summons served on the parents contains a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent.
 If after making disposition as authorized by division (A)(2) of this section, a motion is filed that requests permanent custody of the child, the court may grant permanent custody of the child to the movant in accordance with section 2151.414 [2151.41.4] of the Revised Code.
R.C. 2151.353(A) governs a juvenile court's orders of disposition upon an adjudication that a child is an abused, neglected or dependent child. R.C. 2151.353(A)(4) is applicable to the instant case; it provides that the juvenile court may commit the child to the permanent custody of a public services agency if the court determines that "the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines * * * that the permanent commitment is in the best interest of the child * * *."
In the instant case, the juvenile court determined that the children cannot be placed with either parent within a reasonable time or should not be placed with them for the following reasons:
 Following the placement of the children outside of the home, the parent(s) has failed continuously and repeatedly for a period of six (6) months or more to substantially remedy the conditions causing the children to be placed outside the home.
 The parent[s] has failed or refused to provide basic necessities, regular support, visit or communicate with the children when able to do so or by other actions, has shown an unwillingness to provide an adequate permanent home for the children.
The juvenile court also determined that it was in the children's best interest to grant permanent custody to CCDCFS.
Appellant does not argue that the juvenile court's determinations were not supported by the evidence. He merely contends that the court should have considered giving custody of the children to him and thus violated his due process rights by not doing so. The matter before the juvenile court was not a custody dispute; it was a hearing on CCDCFS's complaint for permanent custody. By granting permanent custody to the children services agency, the juvenile court terminated appellant's parental rights. The complaint served upon appellant defined "permanent custody" as: "a legal status which vests in a public services agency * * *, all rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of any and all parental rights, privileges and obligations, including all residual rights and obligations." Because appellant was properly served with the complaint and was represented by counsel at the adjudicatory and dispositional hearings, we cannot conclude that the juvenile court violated appellant's rights to due process in this case.
Even if the juvenile court was required to consider placing the children with appellant before granting permanent custody to CCDCFS, the record is replete with evidence that the children should not be placed with appellant. Michelle Harris repeatedly made allegations that appellant had sexually abused her. According to the testimony of Lilla Towns, the social worker on the case, Michelle reported to a sex abuse counselor that she had been sleeping in the same bed as appellant and that her vagina was sore. Ms. Towns further testified that Michelle disclosed to her that the landlord touched her and urinated on her. Ms. Johnson, the children's legal custodian, gave the same testimony. The report of the guardian ad litem states that it "became clear that inappropriate touching and possibly inappropriate sleeping arrangements for the children were established." Ms. Towns also testified that a key component of the mother's case plan was obtaining housing separate from appellant. The trial court did not err by failing to consider placing the children with appellant before granting permanent custody to CCDCFS. Appellant's first assignment of error is overruled.
Appellant's remaining assignments of error will not be addressed because they are not argued in his brief. Appellant must supply reasons in support of his contentions, with citations to the authorities, statutes, and parts of the record on which he relies. App.R. 16(A)(7). Pursuant to App.R. 12(A), an appellate court may overrule or disregard an assignment of error for "lack of briefing" on that assignment. State v. Watson (1998), 126 Ohio App.3d 316, 321, 710 N.E.2d 340, citing Hawley v. Ritley (1988), 35 Ohio St.3d 157, 519 N.E.2d 390. Because appellant has failed to comply with the appellate rules for briefing, we shall disregard appellant's second, third, and fourth assignments of error, and they are deemed overruled.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., AND COLLEEN CONWAY COONEY, J., CONCUR.
 _______________________________ FRANK D. CELEBREZZE, JR. JUDGE: